[Crim. No. 15589. First Dist., Div. Three. Apr. 14, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
THERO WHEELER, Defendant and Appellant.

**Counsel**

Richard M. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Laurence M. May, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DRAPER, P. J.**—Convicted of escape from state prison without force or violence (Pen. Code, § 4530, subd. (b)), defendant appeals.

On August 2, 1973, defendant was a prisoner in California Medical Facility, serving terms under several convictions. That day, he was assigned to a work crew engaged in maintenance of the yard outside the prison proper. He left this assignment and entered an automobile. According to his testimony, he was driven to Palo Alto, where he spent some three days. He was given money (he says $18,000-$20,000) by an unidentified person. He traveled by bus to Reno, Nevada, and boarded a train to New York City, where he stayed in a hotel for a month and a half. He went to Chicago, staying in a hotel there "for a week or two." Late in October, he went to Houston, Texas. He was arrested by F.B.I. agents in Houston July 3, 1975, after he had sought medical treatment for a gunshot wound. He had been employed there under the name Bradley Stuart Bruce, and had a social security card in that name. Appellant offered to prove that: at and before the time of his escape he had been suffering from regional enteritis or ileitis; the medical facility staff had not properly diagnosed his ailment; he had left the prison to seek proper treatment; he underwent surgery for his condition in Houston in October 1974, and again slightly more than a month later. This offer was rejected.

■ Appellant contends that the offered proof would have established a defense under the doctrine of necessity. (*People* v. *Lovercamp,* 43 Cal.App.3d 823 [118 Cal.Rptr. 110, 69 A.L.R.3d 668] [hg. den.].)

That defense to a charged escape is available, however, only if all five conditions of *Lovercamp* are met (*id.,* at pp. 831-832). The fifth of these is that "[t]he prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." (P. 832.)

The trial court correctly found this element lacking in the offer of proof. We assume, for purposes of this discussion only, that conditions 1, 2 and 3 have been met. (The offer of proof is tenuous as to whether the alleged misdiagnosis raised "a specific threat of death . . . or substantial bodily injury in the immediate future" within the meaning of *Lovercamp,* whether complaint to members of the large medical facility staff would be unavailing, and whether the danger was so immediate that there was no time to resort to the courts.)

Appellant visited the major population centers of Chicago and New York, in each of which there are large concentrations of medical knowledge, without securing allegedly urgent treatment. In Houston, he did, at some unspecified time, seek medical treatment, but the surgery which he contends was the immediately required treatment on August 2, 1973, was not performed until October 1974. He continued his failure to report to proper authorities even after a second operation a month later. He had secured employment under an assumed name and identification. He never did voluntarily report himself but was finally apprehended by law officers July 3, 1975. It strains credulity far beyond the breaking point to assume that any justified fear of death or substantial bodily injury "in the immediate future" persisted over this period of 23 months. The trial court was fully justified in rejecting the offered "proof" of physical necessity for the long-continued escape.

■ Appellant also urges error in denying him the right to represent himself. (*Faretta* v. *California,* 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) The trial court appointed counsel for defendant. Thereafter, but well before trial began May 12, 1976, defendant moved that he be permitted to "serve as co-counsel" with the appointed attorney. That motion was denied March 1. By motion filed April 6, defendant couched his motion in terms of his *Faretta* right to represent himself, but stated that he realized that he "is in need of" the assistance of the court-appointed attorney and asked that she be allowed "to assist him in presenting his defense."

*Faretta* holds only that a defendant has the right to present his own case, and that a court may not compel him to accept court-appointed counsel against his will. It neither reaches nor decides the issue that defendant raises here. The pre-*Faretta* rule in California was clear that the trial court had a broad discretion to deny self-representation merely as a supplement to representation by counsel. (*People* v. *Hill,* 70 Cal.2d 678, 691-692 [76 Cal.Rptr. 225, 452 P.2d 329], quoting *People* v. *Mattson,* 51 Cal.2d 777, 789 [336 P.2d 937].) The United States Supreme Court has not reached this issue, but federal courts have held that *Faretta* does not alter the earlier rule that a defendant is not entitled to counsel who will but serve jointly or alternatively with him, at his pleasure, in presenting his case to the jury. (*United States* v. *Bennett* (10th Cir. 1976) 539 F.2d 45, 49; *United States* v. *Williams* (8th Cir. 1976) 534 F.2d 119, 123; *United States* v. *Hill* (10th Cir. 1975) 526 F.2d 1019, 1024.) We find no error in the trial court's denial of such double representation.

We have examined in detail appellant's assertions of inadequacy of trial counsel, and find no merit in them.

Judgment affirmed.

Scott, J., and Good, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.